# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| In re Mardi Lynn Topcik, | |
| Debtor, | Civil Action No.: 9:21-438-RMG |
| Gerald Hornback, | |
| Plaintiff-Appellant | |
| v. | **ORDER AND OPINION** |
| Mardi Lynn Topcik, | |
| Defendant-Appellee. | |

This matter is an appeal from the United States Bankruptcy Court for the District of South Carolina. Appellant Gerald Hornback ("Appellant" or "Hornback") brought the adversary proceeding at issue asserting causes of action for nondischargeability pursuant to 11 U.S.C. § 523(a)(5) and (a)(15). The Bankruptcy Court denied Appellant's motions for default judgment and dismissed Plaintiff's adversary complaint. (Dkt. No. 1 at 2-7). The Bankruptcy Court then denied reconsideration of the same. (*Id.* at 8-11). Appellant has appealed the Bankruptcy Court's denial of default judgment and dismissal of this action. (Dkt. No. 3). For the reasons stated below, the Court affirms in part and reverses in part the final order of the Bankruptcy Court, and remands this matter for further proceedings.

## I. Background

In his adversary complaint, Hornback alleges that Appellee Mardi Lynn Topcik—the debtor in *In re Mardi Topcik*, No. 19-06016-dd (D.S.C. 2019)—submitted a student loan

application for her daughter listing Hornback as the borrower, resulting in Hornback being responsible for the student loans. (Dkt. No. 2-1 at 8). Hornback and Topcik were married at the time of the alleged submission of the application, but later divorced and entered into a marital dissolution agreement. (*Id.* at 7-8). The agreement provided that "each party shall pay all debts and obligations he or she has incurred independently and shall hold the other party harmless therefrom." (*Id.* at 9). Hornback alleges that because Topcik submitted the loan application using his name without his knowledge, the student loan incurred was by Topcik independently and therefore falls under this provision of the martial dissolution agreement. (*Id.* at 9-10). Hornback argues that this debt, owed by Topcik to him, is therefore nondischargeable as a domestic support obligation or otherwise in connection with the parties' divorce.[1]

Prior to commencing this action, on or around October 11, 2016, Hornback brought an action in Tennessee state court for fraud and breach of contract against Topcik and her daughter Amanda Shoffner. (Dkt. No. 3-1 at 4). The Tennessee court granted Schoffner summary judgment but permitted Hornback's claims against Topcik to proceed to trial. (Dkt. No. 3-2 at 7-8). The case was set for trial to begin September 25, 2019, but the trial was continued and re-docketed for February 3, 2020. (*Id.* at 10).

On November 14, 2019, Topcik filed a Chapter 7 petition. *In re Mardi Topcik*, No. 19-06016-dd (D.S.C. 2019). Topcik listed the Tennessee lawsuit as a potential debt.

On June 2, 2020, Hornback initiated this adversary proceeding.

---

[1] The Bankruptcy Court noted, and Hornback does not dispute on appeal, that Hornback failed to timely file an objection to dischargeability based on fraud pursuant to 11 U.S.C. § 523(a)(2) or (6) in the underlying Chapter 7 proceedings. (Dkt. No. 1 at 2 n.1). Hornback's adversary complaint therefore does not—indeed cannot—allege fraud.

On September 3, 2020, the Bankruptcy Court denied a motion to dismiss filed by Topcik. (Dkt. No. 2-2 at 45). After her motion to dismiss was denied, Topcik did not file an answer or further participate in the proceeding. (Dkt. No. 1 at 3).

On October 14, 2020, Hornback moved for default judgment. (Dkt. No. 2-1 at 3).

On December 8, 2020, the Bankruptcy Court held a hearing on Hornback's motion. (*Id.* at 4) (the "hearing").

On January 22, 2021, the Bankruptcy Court denied Hornback's motion for default judgment and dismissed Hornback's adversary complaint. (Dkt. No. 1 at 2-7). On February 5, 2021, the Bankruptcy Court denied Hornback's motion for reconsideration. (*Id.* at 8-11).

This appeal ensued.

## II.    **Legal Standard**

This appeal is brought pursuant to Rule 8001 of the Federal Rules of Bankruptcy Procedure, which permits an appeal as of right from a judgment, order, or decree of a bankruptcy judge to a district court as authorized by 28 U.S.C. § 158(a)(1). On appeal from the bankruptcy court, this Court acts as an appellate court and reviews the bankruptcy court's findings of fact for clear error and conclusions of law *de novo*. *In re Merry–Go–Round Enters., Inc.*, 400 F.3d 219, 224 (4th Cir. 2005); *Kielisch v. Educational Credit Mgmt. Corp. (In re Kielisch)*, 258 F.3d 315, 319 (4th Cir. 2001). Mixed questions of law and fact are also reviewed de novo. *In re Litton*, 330 F.3d 636, 642 (4th Cir. 2003). The bankruptcy court's decisions to enter or vacate judgment by default or to impose sanctions, unless rooted in an error of law, are subject to the more deferential abuse of discretion standard of review. *In re Thomas Consolidated Indus.*, 456 F.3d 719, 724 (7th Cir. 2006); *In re Hamlett*, 322 F.3d 342, 345 (4th Cir. 2003).

3

A bankruptcy court abuses its discretion if it does not apply the correct law or rests its decision on a clearly erroneous finding of material fact. *Pac. Shores Dev., LLC v. At Home Corp. (In re At Home Corp.)*, 392 F.3d 1064, 1067 (9th Cir. 2004); *United States v. Welsh*, 879 F.3d 530, 536 (4th Cir. 2018) (stating the burden to show an abuse of discretion is "a heavy one, as a district court abuses its discretion only where it has acted arbitrarily or irrationally[,] ... has failed to consider judicially recognized factors constraining its exercise of discretion, or when it has relied on erroneous factual or legal premises.") (internal quotation marks omitted). A finding of fact is "clearly erroneous" if "'the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573, 105 S. Ct. 1504, 84 L.Ed.2d 518 (1985) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S. Ct. 525, 92 L. Ed. 746 (1948)).

## III. Discussion

### a) Law of Default Judgments

Default judgments are governed by Fed. R. Civ. P. 55, which is made applicable to bankruptcy proceedings by Rule 7055. Fed. R. Civ. P. 55 provides, in pertinent part, as follows:

**Rule 55. Default; Default Judgment**

**(a) Entering a Default.** When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.

**(b) Entering a Default Judgment.**

(1) *By the Clerk*. If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk—on the plaintiff's request, with an affidavit showing the amount due—must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person.

    (2) *By the Court*. In all other cases, the party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to:

      (A) conduct an accounting;

      (B) determine the amount of damages;

      (C) establish the truth of any allegation by evidence; or

      (D) investigate any other matter.

Fed. R. Civ. P. 55.

  "Entry of a default by the bankruptcy court clerk does not automatically entitle a plaintiff to entry of a default judgment, regardless of the fact that generally the effect of entry of a default is to deem allegations admitted. Courts have wide discretion in deciding whether or not to enter a default judgment under Fed. R. Civ. P. 55, and the Rule itself authorizes the bankruptcy court to conduct such hearings 'as it deems necessary and proper.' Bankruptcy courts are accordingly provided the discretion to require proof of the facts necessary to determine a valid claim for relief against the defaulting parties." *In re Beltran*, 182 B.R. 820, 823–24 (B.A.P. 9th Cir. 1995) (internal citations omitted); *In re Rowell*, 440 B.R. 117, 119 (Bankr. D.S.C. 2010) (noting that "the court must determine whether the default judgment should be granted and can conduct a hearing on the matter if it so chooses"); *Weft, Inc. v. G.C. Inv. Associates*, 630 F. Supp. 1138, 1141 (E.D.N.C. 1986) (in passing upon a request for a default judgment, the court has a duty to examine those

5

allegations and satisfy itself that the entry of judgment based upon them would be appropriate), *aff'd sub nom Weft, Inc. v. Georgaide*, 822 F.2d 56 (4th Cir. 1987).

Here, to succeed on his claim that the debt incurred was nondischargeable as a domestic support obligation under § 523(a)(5), Hornback had to prove the that the debt was (1) owed to or recoverable by a spouse or former spouse, (2) in the nature of alimony, maintenance, or support of such spouse or former spouse, (3) established prior to the bankruptcy filing by a separation agreement, divorce decree, property settlement agreement, an order of the court, or some other determination made in accordance with applicable nonbankruptcy law by a governmental unit, and (4) not assigned other than for collection purposes. 11 U.S.C. § 101(14A). For an obligation to be nondischargeable under § 523(a)(15), Hornback had to establish that he holds a claim against Topcik "that was awarded by a court in the course of a divorce proceeding or separation." *Baker v. Baker (In re Baker)*, 274 B.R. 176, 195 (Bankr. D.S.C. 2000) (quoting *Morgan v. LeRoy (In re LeRoy)*, 251 B.R. 490, 504 (Bankr. N.D. Ill. 2000)).

### b) The Bankruptcy's Court's Orders

According to the Bankruptcy Court,[2] at the hearing, Hornback "testified that he signed one document, a release, in connection with the student loan and that he was advised that his signature was needed on the document because [Topcik's] credit was not good enough for her to obtain the loan on her own." (Dkt. No. 1 at 3). The Bankruptcy Court allowed into evidence Exhibits A

---

[2] In its order denying default judgment, (Dkt. No. 1 at 2-7), and its order denying reconsideration, (*id.* at 8-11), the Bankruptcy Court assessed the credibility of testimony proffered at the hearing by Hornback and his counsel. Hornback declined to procure or submit a transcript of the hearing for his appeal. (Dkt. No. 2-1 at 5). Thus, to the extent Hornback's arguments now attempt to contradict factual findings of the Bankruptcy Court derived from such testimony, such arguments fail as Hornback has no substantive means of showing those findings are "clearly erroneous."

6

through J. (*Id.*).[3] During the hearing, the "master promissory note" Topcik allegedly signed in Hornback's name "was not presented to the Court or admitted into evidence." (*Id.* at 9) (noting that "[i]nstead, a copy of the note was attached to the Hornback's complaint"); *see* Exhibit G, (Dkt. No. 3-2 at 36) (Topcik and Schoffner's motion for summary judgment in the Tennessee state court action which *itself included* a copy of the "note"). "[P]laintiff's counsel did not point the Court to the copy of the note attached to the complaint at the hearing" but did "reference" it. (Dkt. No. 1 at 9). "Exhibit K[4], which the Court admitted into evidence at the hearing, was to be provided to the Court after the hearing and was to be a copy of the master promissory note, as well as other portions of the original student loan lender's file. At the hearing, [Hornback's] counsel stated that the file was well over 100 pages. However, what [Hornback] actually submitted as Exhibit K was a 'Compass Deconversion History' from EdSouth. The Court also requested that [Hornback] submit Exhibit L[5] after the hearing, which was to be a combined comprehensive summary of the loan

---

[3] These exhibits included: a verified complaint filed in state court prior to Topcik's bankruptcy filing asserting claims for breach of contract and fraud and alleging that Topcik induced Hornback into signing a guarantee for the student loans, promising him he would not have to repay the loans, Ex. A, (Dkt. No. 3-1 at 4-7); an order of continuance from the Tennessee state court case, Ex. B, (Dkt. No. 3-1 at 10); a single page from a Federal Family Education Loan Program Federal PLUS Loan Application, Ex. C (Dkt. 3-1 at 11-12) (approving Hornback for a loan and denying Topcik); an EdFinancial Information Release Form signed by Hornback for Topcik, Ex. D, (Dkt. No. 3-1 at 14); a copy of Hornback and Topcik's marital dissolution agreement, Ex. E, (Dkt. No. 3-1 at 16); an email from Hornback to Topcik requesting her help paying unspecified loans and indicating Hornback himself had paid down certain loans, Ex. F, (Dkt. No. 3-1 at 26); a summary judgment motion filed by Topcik and her daughter in the Tennessee state court action, Ex. G, (Dkt. No. 3-1 at 28 *et seq.*); the state court order on said motion for summary judgment, Ex. H, (Dkt. No. 3-2 at 6 *et seq.*); a Navient Loan Details summary for one Parent PLUS Loan, Ex. I (Dkt. No. 3-2 at 11-12); and a Nelnet statement for a second loan, Ex. J, (Dkt. No. 3-2 at 14-15).

[4] Ex. K, (Dkt. No. 3-2 at 18).

[5] Ex. L, (Dkt. No. 3-2 at 20-23).

from Navient [Ex. I] and Nelnet [Ex. J], the current servicers, from the date they received the loans to the present. However, what [Hornback] submitted to the Court as Exhibit L was a Navient loan detail summary as of December 8, 2020, showing the current balance for one loan, as well as a portion of the Nelnet loan summary, showing current balances for two loans." (*Id.* at 10-11).

The Bankruptcy Court denied Hornback's motion for default judgment and found that Hornback could not establish "any debt owed him by [Topcik]." The Bankruptcy Court found that the "pleadings, testimony, and exhibits do not paint a clear or consistent picture." (*Id.* at 6). The Bankruptcy Court noted, for example, that "the Navient and Nelnet statements show more than one loan" and that "Hornback has failed to present a copy of the master promissory note." (*Id.* at 7). The Bankruptcy Court concluded:

> It is impossible to determine whether the various loan statements submitted to the Court are for loans made under the master promissory note that Mr. Hornback complains was independently incurred by [Topcik], albeit in his name. The Navient and Nelnet statements show more than one loan. Despite requests by the Court, [Hornback] *has failed to present a copy of the master promissory note*. [Hornback] has not satisfied his burden of establishing a domestic support obligation under § 523(a)(5) or a claim under the marital dissolution agreement under § 523(a)(15).
>
> As the Court has previously noted, the state court action filed against [Topcik] pre-petition was based in fraud, and this adversary proceeding pursuant to § 523(a)(5) and (a)(15) was commenced only after the Court denied [Hornback's] motion for relief from stay filed in Ms. Topcik's main bankruptcy case, pointing out that the deadline for seeking a determination of non-dischargeability on the basis of fraud had expired. [Hornback's] *strategy in the state court action and throughout this case has not been consistent, the facts asserted have been inconsistent, and as a result the record is incomplete and confusing, at best*. [Hornback's] contention in this adversary proceeding was that the debt evidenced by the master promissory note was independently incurred by [Topcik] and therefore falls under the parties' marital dissolution agreement. This may in fact be the case, but despite being given opportunities, including post-hearing, [Hornback] *has failed to produce evidence to support his statements. The documentary evidence and testimony is inconsistent, rendering the testimony less than credible*. [Hornback] has failed to satisfy his burden of establishing nondischargeability of the debt.

8

(*Id.* at 5-7) (emphasis added).

In its order denying reconsideration, the Bankruptcy Court further concluded:

[M]ost importantly, despite requests by the Court, [Hornback] has failed to provide evidence linking the note to Exhibit L, admitted at the hearing on default judgment, but provided to the Court after the hearing. Exhibit L contains current account statements for three student loans. [Hornback] asserts that Exhibit K establishes that three loan disbursements were made under the master promissory note; however, there is no indication on Exhibit K that those distributions were made under the note attached to the complaint. *No other evidence was presented to establish this. And, as* [Hornback] *notes in the motion to reconsider, at the hearing* [Hornback's] *counsel was unclear as to how many distributions had even been made. The evidence presented in connection with* [Hornback's] *request for default judgment was confusing and simply insufficient to grant . . . a default judgment. This and the inconsistency in* [Hornback's] *position across the state court litigation, motion for relief from stay, and in the adversary proceeding undermines the credibility of* [Hornback] *in any conclusory statements in the pleadings and during the hearing.*

(*Id.* at 11) (emphasis added).

### c) Analysis—The Denial of Entry of Default Judgment

After a careful review of the entire record, the Bankruptcy Court's orders denying Hornback default judgment and reconsideration of the same, and Hornback's arguments on appeal, the Court finds that the Bankruptcy Court did not abuse its discretion in denying Hornback default judgment. As shown above, the Bankruptcy Court was justified in finding uncredible Hornback's testimony that the master promissory note was taken out without his knowledge but in his name—especially given the conflicting theories presented by Hornback in this case. *See* (*id.* at 6).[6]

---

[6] For example, in his Tennessee state court complaint, Hornback alleged Topcik "induced" *him* into signing a guarantee for student loans for Topcik's daughter. (Dkt. No. 3-1 at 5). In his adversary complaint, however, Hornback alleges he "was led by [Topcik] to believe that he had signed a loan application" which Topcik would pay back. (Dkt. No. 2-1 at 8) (citing Exhibit D, an EdFinancial "information release form"). Additionally, certain exhibits Hornback attached to his adversary complaint undermine Hornback's claim that Topcik took the loan out "independently" of Hornback. *See* Ex. F, (Dkt. No. 3-1 at 26) (email from Hornback to Topcik asking for help

9

Relatedly, it is undisputed that Hornback failed to produce all documentation he promised to provide the Bankruptcy Court post-hearing—evidence which the Bankruptcy Court had the prerogative to request in order to confirm that the loans referenced in Exhibits I and J "originated from the master promissory note that the Hornback alleges [Topcik] submitted in his name." (Dkt. No. 1 at 4).

On appeal, Hornback first objects that default judgment should have been entered in his favor because Hornback "testified that he never entered into any application for student loans for [Topcik's] daughter, but rather he had signed a release allowing his ex-wife access to the loan accounts." (Dkt. No. 3 at 7). Hornback also argues that default judgment was proper because he "presented the Court with evidence of a master promissory note under which" loans were allegedly taken out for Topcik's daughter's benefit in Hornback's name. (*Id.*) (internal citation omitted).

The Court finds neither argument persuasive. As discussed in detail above, Hornback did <u>not</u> present "evidence" of a master promissory note at the hearing. Nor did Hornback submit such documentation through post-hearing Exhibits K and L. (Dkt. No. 1 at 9-10) (noting the master promissory note was not admitted into evidence at the hearing and further noting that the "master promissory note" Hornback discussed in his briefing was only a single page and contained information that arguably ran counter to Hornback's adversary claims such as the statement, "If I have an adverse credit history and obtain an endorser to receive a PLUS loan, only one loan may be made to me under this MPN"); Ex. C, (Dkt. No. 3-1 at 11) (denying Topcik's loan application and approving Hornback's). Further, in denying entry of default judgment, the Bankruptcy Court

---

getting "these [loans] squared away" and noting "I had Amanda['s] student loans in default over the last 10 months *I got them out*. I a[m] working on a[n] economic hardship deferment for [them] right now") (emphasis added).

10

explicitly discussed Hornback's testimony that he signed a "release, in connection with the student loan" at issue. (*Id.* at 3). As noted above, however, the Bankruptcy Court found this testimony "less than credible" given the record before the court. (*Id.* at 7). At bottom, Hornback provides no compelling reason nor evidence for finding the above factual findings clearly erroneous or the Bankruptcy Court's decision to deny default judgment an abuse of discretion.

Last, Hornback argues that default judgment was appropriate because he presented "the court with evidence showing which loans were being serviced by Navinet [Exhibit K] and which were being serviced by Nelnet [Exhibit L] and the amounts owing on those loans." (Dkt. No. 3 at 7, 13) (arguing Hornback's "damages . . . [were] clearly identified for the court below").

Again, the Court finds Hornback's arguments unpersuasive. As detailed above, what Hornback provided to the Bankruptcy Court post-hearing as Exhibits K and L varied significantly from what Plaintiff had promised during the hearing. *See* (Dkt. No. 1 at 10). Accordingly, given the incomplete documentation Hornback provided to the Bankruptcy Court, the Bankruptcy Court did not commit clear error in finding that Hornback had failed to "provide evidence linking the note to Exhibit L" or that the distributions indicated on "Exhibit K . . . were made under the note attached to the complaint." (*Id.*).

In sum, the Bankruptcy Court did not abuse its discretion in declining to enter default judgment for Hornback. *See In re Rowell*, 440 B.R. at 119 (noting that "the court must determine whether the default judgment should be granted and can conduct a hearing on the matter if it so chooses"); *Weft, Inc.*, 630 F. Supp. at 1141 (in passing upon a request for a default judgment, the court has a duty to examine those allegations and satisfy itself that the entry of judgment based upon them would be appropriate).

### d) Analysis—The Bankruptcy Court's Dismissal of Plaintiff's Adversary Complaint

Last, Hornback argues that the Bankruptcy Court erred by dismissing his adversary complaint after declining to enter default judgment. (Dkt. No. 3 at 13).

The Court finds that the Bankruptcy Court erred by dismissing this case after declining to enter default judgment for Hornback. Instead, after declining to enter default judgment in Hornback's favor—a decision within the Bankruptcy Court's discretion—the proper course was to allow discovery and a trial on Hornback's complaint. *See In re Villegas*, 132 B.R. 742, 746-47 (B.A.P. 9th Cir. 1991) (finding that Rule 55(b)(2) does not permit "a trial court to enter judgment in favor of the defaulting party" and dismiss an action following a prove-up hearing where a plaintiff does not meet his burden of showing default judgment is warranted). Accordingly, the Court REMANDS this case to allow Hornback the opportunity to conduct discovery and present his case at trial. *See id*; *In re Beltran*, 182 B.R. 820, 826 (B.A.P. 9th Cir. 1995) (noting that "[f]ollowing denial of a motion for default judgment, a plaintiff . . . ordinarily [is] afforded the opportunity to conduct discovery and proceed to trial in an effort to prove its case").

## IV. Conclusion

For the foregoing reasons, the Court **AFFIRMS IN PART AND REVERSES IN PART** the final order of the Bankruptcy Court (Dkt. No. 1). The Court **AFFIRMS** the Bankruptcy Court's denial of entry of default judgment. The Court **REVERSES** the Bankruptcy Court's dismissal of this action. This case is therefore **REMANDED** for discovery and a trial on Hornback's complaint.

**AND IT IS SO ORDERED.**

s/ Richard Mark Gergel
United States District Judge

June 16, 2021
Charleston, South Carolina